Mahlon D. GREEN, Plaintiff-Appellee,

v.

James B. McKEON et al., Defendants-Appellants.

No. 71-2077.

United States Court of Appeals,
Sixth Circuit.

Oct. 12, 1972.

Russel W. Schmidt, Wayne, Mich., for appellants.

Robert J. Whall, Livonia, Mich., for appellee; Barton, Whall & Perry, Livonia, Mich., on briefs.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is an appeal from a decision, 335 F.Supp. 630, declaring unconstitutional a section of the city charter of Plymouth, Michigan, which requires two years residence in the city as a condition of eligibility to hold elective office. We affirm.

One week prior to the filing deadline for the August 1971 primary election, Mahlon D. Green filed with the Plymouth City Clerk a nominating petition for the office of City Commissioner. On the deadline date the Plymouth Elections Commission rejected Green's petition on the grounds that he had not complied with the two year residency and property ownership requirements of the city charter.[1] Green filed a civil rights action against the Commission,

---

1. The charter provides:

"Section 4.4 Except as otherwise provided in this charter, an elector of the City shall be eligible to hold elective or appointive office, if he shall have been a resident of the city for two years immediately prior to the date of his election or appointment to office, . . . To be eligible to hold an elective office, a person shall also have been, for a period of two years prior to the date of his election or appointment to office, the owner of property located within and assessed for taxes by the City."

individually and on behalf of all registered electors of the city, seeking a declaration that the charter provision was a denial of equal protection and an order requiring that his name be placed on the ballot. District Judge Damon J. Keith ruled that the durational residency and property ownership requirements were invalid and granted the requested relief. The Election Commission appeals from that part of the order invalidating the residence requirement. No appeal has been taken from the invalidation of the property ownership restriction.

The principal controversy on appeal, as it was in the District Court, involves the appropriate standard for judicial review of the challenged requirement. The Commission urges that since there is no constitutional right to public office, the equal protection clause is offended only if the regulation is shown to be invidiously discriminatory. Green contends that the restriction can not stand unless shown to be necessary to promote a compelling city interest. The inextricable intertwining of the rights of the voters and the rights of potential candidates is said to mandate this strict scrutiny.

In its most recent consideration of candidate restrictions, the Supreme Court noted:

"The initial and direct impact . . . is felt by aspirants for office, rather than voters, and the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review. However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. . . . In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." Bullock v.

Carter, 405 U.S. 134, 142–143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972) (citation and footnote omitted).

■ Close scrutiny of the challenged restriction is required where the restriction has "a real and appreciable impact on the exercise of the franchise." *Id.* at 144, 92 S.Ct. at 856. In addition to Judge Keith's decision in the instant case, three other District Court opinions from the Eastern District of Michigan have held that the interests of the voters required strict review of limitations placed on candidates. *See* Mogk v. Detroit, 335 F.Supp. 698 (1971) (McCree, Thornton, Roth, JJ.); Bolanowski v. Raich, 330 F.Supp. 724 (1971) (Feikins, J.); Stapleton v. Clerk for Inkster, 311 F.Supp. 1187 (1970) (Freeman, C. J.). In light of the alternative ground for affirmance set forth below, we do not pass on the question of whether the impact of Plymouth's charter provision on the exercise of the franchise is sufficient to satisfy the criteria of *Bullock* to trigger application of the more stringent standard.

■ The durational residency requirement at issue classifies Plymouth residents on the basis of recent travel. That classification alone requires that the requirement be strictly scrutinized because it operates to penalize the exercise of the basic constitutional right to travel. Dunn v. Blumstein, 405 U.S. 330, 338, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). It is not material that the classification denies new residents something that is not a constitutional right, i.e., the right to become a candidate for public office. *See, e.g.*, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (public assistance benefits); King v. New Rochelle Mun. Housing Auth., 442 F.2d 646 (2d Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971) (public housing); Keenan v. Board of Law Examiners, 317 F.Supp. 1350 (E.D.N.C. 1970) (3-judge court, admission to the bar); Vaughan v. Bower, 313 F.Supp. 37 (D. Ariz.) (3-judge court), aff'd mem., 400 U.S. 884,

91 S.Ct. 139, 27 L.Ed.2d 129 (1970) (medical aid). We see no reason to apply a lesser standard to the present case.

■ The Commission says that the two year residency requirement is justified because every candidate for City office needs to become familiar with the local form of government and the problems peculiar to the municipality. We hold that the two year residence requirement is too broad for the achievement of that objective.

"It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means which unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with 'precision,' . . . and must be 'tailored' to serve their legitimate objectives. . . . And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.'" Dunn v. Blumstein, supra, 405 U.S. at 343, 92 S.Ct. at 1003 (citations omitted).

The restriction is in no way "tailored" to achieve the stated municipal goal. It permits a two year resident of Plymouth to hold public office regardless of his lack of knowledge of the governmental problems of the city. On the other hand, it excludes more recent arrivals who have had experience in local government elsewhere or who have made diligent efforts to become well acquainted with the municipality. Further, in our representative form of government, the voters are the arbiters of the suitability of candidates for public office. Whether a candidate has the ability to carry out the duties of a particular city office, even though he arrived in Plymouth less than two years prior to election day, is a matter for consideration by the voters in choosing between candidates running for that office. Opposing candidates undoubtedly will bring this deficiency, if it be one, to the attention of the electorate in the course of campaigning.

We emphasize, as did the Court in *Blumstein*, that the provision at issue is a *durational* residency requirement. Plymouth is not precluded from requiring its officials to be bona fide residents, as determined by appropriately defined and uniformly applied standards. However, the city may not require that candidates for city office must *have been* bona fide residents for two years prior to election day.

Affirmed.

O'SULLIVAN, Senior Circuit Judge (dissenting).

Respectful to my brothers, I dissent.

Article IV, Section 4, of the United States Constitution provides:

"The United States shall guarantee to every State in this Union a Republican Form of Government, * * * ."

Employing the prerogatives that are part of a republican form of government, the Legislature of Michigan by Act 279 of the Public Acts of 1909, provided for what are commonly known as Home Rule Cities. M.S.A. § 5.2071, et seq., M.C.L.A. § 117.1 et seq. By Section 3 of this Act, § 5.2073, M.C.L.A., §§ 117.3, 117.4a, it is provided that:

"Each city charter shall provide:

* * * * * *

(a) for the qualifications, duties and compensation of its officers."

Pursuant to the authority of the Constitution of the United States and the mentioned Act of the Michigan Legislature, the people of Plymouth adopted a Charter which provides:

"Section 4.4. Except as otherwise provided in this charter, an elector of the city shall be eligible to hold elective or appointive office, if he shall have been a resident of the city for two years immediately prior to the date of his election or appointment to

office, and shall not be in default to the city, the County of Wayne, or to any school district located within the city."

This Section was included in charters of the City of Plymouth in 1918, 1932, and 1951.

This charter provision is struck down because, it is said, Plymouth has failed to demonstrate that there was some "compelling state interest" that prompted the people of Plymouth to adopt the quoted charter provision. I am not at all sure that I understand what inherent wrong there is in the Plymouth charter provision which can survive only if Plymouth can show that its interest compelled it to adopt it. I do not read this "compelling state interest" rule to come into being unless the action of a state, or any of its subdivisions, is otherwise offensive to the United States Constitution or its Amendments. I cannot find that the Plymouth charter provision here involved is "invidiously discriminating" against any person or any right.

The Tenth Amendment to the Constitution provides that,

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

I believe that the right of the people of the State of Michigan to permit its Home Rule cities to provide for the non-discriminatory qualifications of their officers is, and was, one of such non-delegated powers.

There is growing public concern arising from the ever-increasing taking over by the United States Courts of the prerogatives of the State Legislatures. In one of the principal cases relied on by the majority—Mogk v. City of Detroit, 335 F.Supp. 698, 699 (E.D. Mich. 1971), (a three judge, District Court case), the opinion deals with a charter provision of the City of Detroit which had to do, as here, with the residential requirement of a candidate for municipal office under the Michigan Home Rule Act. The opinion says:

"The residential requirement here in question originated in the 1909 Home Rule Act of Michigan. We point to these dates to suggest that vast changes have taken place in our way of living between the turn of the century and 1971. What may have been a rational and justifiable classification of eligibility for public office in 1909 may not necessarily be so regarded in the 1970's." 335 F.Supp. at 699.

If, as this quotation recites, "vast changes have taken place in our way of living between the turn of the century and 1971," which suggest some revision of the law, such can and should be accomplished by the people through their elected legislative representatives, and not summarily ordered by judicial command.

I believe that the Plymouth charter provision cannot be viewed as unreasonable, or beyond the legitimate power of the Plymouth City Council. The "compelling state interest" rule is not applicable to the case before us. Bullock v. Carter, 405 U.S. 134, 142–143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

I would reverse and vacate the judgment of the District Court.